UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| EDWARD SALOMON and ANNETTE SALOMON, Plaintiffs, | ) ) ) ) |
| v. | ) CAUSE NO.: 2:15-CV-464-JVB-JEM ) |
| MCCARTY WELL DRILLING INC., Defendant. | ) ) ) |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 77], filed April 24, 2020. Plaintiffs Edward and Annette Salomon (the "Salomons") allege that Defendant McCarty Well Drilling, Inc. ("McCarty") was negligent in drilling holes for their geothermal heating and cooling system, causing sulfur water to flood into their home. After McCarty filed this motion for summary judgment, the Salomons filed a response on May 22, 2020. McCarty did not file a reply.

**SUMMARY JUDGMENT STANDARD**

Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted). To demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material

facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *Liberty Lobby*, 477 U.S. at 249-50.

## MATERIAL FACTS[1]

Plaintiffs Edward and Annette Salomon own property in Beverly Shores, Indiana, on the shore of Lake Michigan. In 2009, they contracted Mark Scott, and his company Mark Scott Construction LLC, to demolish the existing house on the property and build a new house. The new house would use a geothermal heating and cooling system, which involves drilling underground and installing pipes known as "earth loops" that move heat into or out of the ground. Resp. Ex. 1, Deposition of Mark Wurzel ("Wurzel Dep.") [DE 79-2], 9:7-21, 11:3-20. Scott and his company contracted Mark Wurzel and his company Water Furnace Michiana to install the geothermal system.[2] Wurzel in turn hired Defendant McCarty Well Drilling, Inc., to drill the holes and install the pipes.

Scott, Wurzel, and McCarty collaborated to determine how and where to drill the holes. Among other issues, the contractors needed to determine whether to drill many shallow holes, or

---

[1] The Court's summary of the facts is adapted from the allegations of the Salomons, the non-movants, unless otherwise indicated.

[2] Mark Scott, Mark Scott Construction LLC, and Water Furnace Michiana were all named in the Complaint, but settled, leaving McCarty as the sole remaining defendant.

2

fewer, deeper holes, which would be more efficient for McCarty, the driller. *Id.*, 24:6-25, 73:7-74:6. Wurzel and McCarty decided how deep the holes could be based on McCarty's assessment of the geology of the area, while Scott and Wurzel determined the location of the holes. *Id.*, 70:21-71:12; 74:9-14. However, McCarty's research revealed little information about the geology of the area. Resp. Ex. 2, Deposition of Greg McCarty ("McCarty Dep.") [DE 79-3], 22:4-8. The contractors decided to drill six 200-foot holes: three under what would become the garage, and three under the driveway. *Id.*, 20:11-25. The holes would be sealed with bentonite, a pliable material. *Id.*, 30:4-31:19.

McCarty began drilling on June 29, 2010. Greg McCarty, the company's owner, drilled the first two holes without incident. When he drilled the third hole, muddy water began spouting from the hole at a rate of 80 gallons per minute. *Id.*, 33:3-16, 47:4-13. Although McCarty had experienced "artesian flows" before, this was different in that the water had a sulfuric smell. *Id.*, 34:5-11. McCarty capped the hole to stop the flow until he returned the next day. *Id.*, 38:5-13. When he returned, the 200-foot hole had filled on its own with sediment, leaving only an 80-foot hole. *Id*. The contractors decided to place the earth loop into the remaining 80-foot hole, seal it with cement, and continue working. *Id.*, 38:14-25, 40:19-41:5. McCarty advised Scott that they would have to stop drilling 200 feet down, but did not return to the holes he had already drilled, because he thought those were adequately sealed. *Id.*, 42:1-43:5.

In January 2014, after the house was completed, sulfuric-smelling water started to bubble up through a drain in the garage. After removing the garage floor, McCarty determined that the flow was coming from the 200-foot holes under the garage. *Id.* at 61:4-21. The water eventually spread throughout the first floor of the house. *Id.* at 52:4-9. A forensic architect retained by the Salomons' insurer testified that the flood was caused by the act of drilling into an artesian aquifer,

3

which could have been identified beforehand. Resp. Ex. 8, Deposition of Lawrence Basil [DE 79-9] 33:20-34:3, 76:6-22. The Salomons turned the project over to a new contractor, Walter Bochenek, who now serves as their expert witness in this case. Based on his experience, his work at the site, and his review of the evidence in this case, Bochenek concluded that McCarty was negligent in its initial decision to drill 200 feet deep and in failing to reseal the other holes with a stronger material, which caused the flooding in the Salomons' house. Resp. Ex. 10, Bochenek Expert Report [DE 79-11].

## ANALYSIS

The Salomons have brought a state law negligence claim against McCarty. To prove negligence, they must show that McCarty owed them a duty, that McCarty breached that duty, and that they were injured as a proximate result of the breach. *Hayden v. Franciscan All., Inc.*, 131 N.E.3d 685, 693 (Ind. Ct. App. 2019). McCarty argues that the Salomons have not shown that McCarty breached any duty, because McCarty did not know there was an aquifer under the property and because the bentonite used to seal the holes was the industry standard in geothermal systems. In a contract for services, such as this, McCarty had a duty to perform the work "skillfully, carefully, diligently, and in a workmanlike manner." *Mullis v. Brennan*, 716 N.E.2d 58, 64 (Ind. Ct. App. 1999). A "workmanlike" manner, in the context of the building trade, means "to do the work as a skilled workman would do it." *Id*.

### 1. Breach

McCarty claims that no evidence supports Bochenek's conclusion that McCarty's actions breached a duty to the Salomons. McCarty's argument is essentially an attack on the credibility of the Salomons' expert witness, Bochenek. An expert opinion based on speculation or conjecture cannot defeat summary judgment. *See, e.g., Dana Corp. v. Am. Standard, Inc.*, 866 F. Supp. 1481,

4

1499 (N.D. Ind. 1994) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 113 S. Ct. 2786, 2795 (1993)). But Bochenek (in his report) and the Salomons (in their response to this motion) both explained the basis for their contentions. Bochenek stated that, other than McCarty's convenience, there was no reason to drill 200 feet into the ground. Given that the area was close to the lakefront and the geology of the area was uncertain, Bochenek concluded that it was inappropriate to drill that deep. In addition, Basil, the insurer's architect, testified that research should have revealed the presence of the aquifer. McCarty contends there was no way to know about the aquifer, and Greg McCarty properly relied on his experience in drilling to 200 feet. Whether McCarty's research was adequate and whether its drilling was sufficiently careful are issues for trial.

The Salomons have also raised an issue for trial as to McCarty's failure to revisit the first two holes after the incident at the third hole. Bochenek concluded that McCarty should have gone back and resealed holes 1 and 2 with a different material. In support of that conclusion, he stated that bentonite, the material used on holes 1 and 2, is pliable and does not become solid, making it vulnerable to pressurized water. Given the aquifer found at hole 3, and the fact that aquifers often encompass a large area, McCarty should have known that holes 1 and 2 were vulnerable. Further, Greg McCarty told Wurzel that he had to find a substance to seal the third hole that would not be dissolved by salt – potentially indicating an awareness that the original sealant, bentonite, would not be adequate. McCarty ultimately used neat cement, not bentonite, on the third hole once the aquifer was breached. All of this evidence supports the claim that McCarty should have resealed the first two holes with a different material. McCarty argues that because bentonite is the "industry standard," he was not negligent in failing to revisit the first two holes once he became aware of

5

the aquifer.[3] Given the contrary evidence presented by the Salomons, a reasonable jury could disagree.

### 2. Proximate Cause

Finally, McCarty argues that the Salomons cannot show the drilling in 2010 proximately caused the flooding at the same property in 2014. An act proximately causes an injury if the injury is a natural and probable consequence that should have been foreseen or anticipated. *Bader v. Johnson*, 732 N.E. 2d 1212, 1218 (Ind. 2000). If proximate cause is not within a layperson's understanding, it must be established by expert testimony. *See Myers v. Ill. Cent. R. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010).

McCarty previously filed a motion to exclude Bochenek's testimony as to causation, which was denied. *See* [DE 52, 62]. Now, he argues that summary judgment is appropriate because Bochenek's opinion is not "significantly probative" as to causation. The argument is not persuasive. First, he argues that Bochenek did not adequately support his conclusion that there was an aquifer on the property. This appears to be based on a misunderstanding of Bochenek's deposition testimony. McCarty says that Bochenek relied on an unnamed source in Porter County's natural resources department to confirm the presence of an aquifer on the property. But Bochenek did not rely on that for his opinion on the 2014 flooding – the conversation with the county employee arose during his subsequent work on the Salomons' home. *See* Resp. Ex. 9 (Deposition of Walter Bochenek) [DE 79-10], 178:12-21. Addressing the 2014 flooding in his report, Bochenek concluded that there was an aquifer based on McCarty's own testimony that he hit an

---

[3] McCarty also argues that bentonite is the "only substance approved for grouting geothermal systems" and drillers are "required" to use it. But that is not apparent from the authorities cited. *See* IC 25-39-4-5 ("A well . . . must have the annular space grouted with *neat cement, bentonite clay, or another [approved] material*") (emphasis added); 312 IAC 13-8-1(c) ("[B]oreholes must be pressure grouted . . . *with a neat cement or* high solids bentonite grout") (emphasis added).

aquifer while drilling the third hole, as well as Bochenek's own observations of the site itself. *See* Bochenek Report at 4-5.

Next, McCarty questions Bochenek's opinion that the bentonite used to seal the holes was dissolved by the briny water underground. McCarty emphasizes that Bochenek is only a geothermal drilling expert, not a chemist. Citing its own expert, McCarty argues that briny water would only dissolve bentonite if it had been pre-treated with that water, which it was not. Even if Bochenek did not have the expertise to create a genuine issue of fact as to how bentonite dissolves in briny water, that was not the only basis for his conclusion that McCarty's work caused the flooding. Bochenek also stated that, independently of the briny water, the particular type of bentonite McCarty used is not effective for sealing deep wells; that drilling to 200 feet created a foreseeable risk of hitting an aquifer; and that when Bochenek did his remedial work, he found that all of the holes under the garage were leaking in some way. *See* Bochenek Report at 5. Bochenek's report raises a genuine issue of material fact as to whether McCarty's work proximately caused the flooding.

## CONCLUSION

For the reasons described above, the Court **DENIES** Defendant's Motion for Summary Judgment [DE 77]. The Court **ORDERS** the remaining parties to file a status report, addressing how they would like the case to proceed, by **February 1, 2021**.

SO ORDERED on January 12, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT